## UNITED STATES DISTRICT COURT,
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNIVERSITY OF WASHINGTON MEDICAL CENTER AND HARBORVIEW MEDICAL CENTER<br><br>     Plaintiffs,<br><br>  vs.<br><br>SYLVIA MATHEWS BURWELL<br>Secretary of the United States Department of Health and Human Services<br><br>     Defendant | No. 2:16-cv-1587<br><br>**COMPLAINT FOR JUDICIAL REVIEW UNDER THE MEDICARE STATUTE** |

The above-named Plaintiffs, by and through their undersigned counsel, state the following in the form of this Complaint against Sylvia Mathews Burwell, Secretary of the United States Department of Health and Human Services (the "Secretary").

## I. INTRODUCTION

1. Plaintiffs (also referred to hereinafter as the "Hospitals") challenge the Secretary's policy of treating patient days for which no payment was received under Medicare Part A as nonetheless "entitled to benefits under part A" for purposes of calculating both fractions of the

Complaint: Page 1

Dina Yunker Frank
Attorney General's Office – UW Division
UW Mailbox 359475
Seattle, WA 98195-9475
(206) 543-4150
Facsimile (206) 543-0779

Disproportionate Share Hospital ("DSH") payment adjustment.  *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi) (the "Medicare DSH Statute"); *see also* 69 Fed. Reg. 48916, 49099 (Aug. 11, 2004) ("[W]e are adopting a policy to include the patient days for M+C [Part C] beneficiaries in the Medicare fraction . . . .").

2. The Ninth Circuit has held that "eligible" and "entitled" must have different meanings. *See Legacy Emanuel Hosp. & Health Ctr. v. Shalala*, 97 F.3d 1261, 1265 (9th Cir. 1996). Yet here, the Secretary has effectively interpreted the phrase "*entitled* to benefits under Part A" to mean "*eligible* for benefits under Part A."

3. If the Secretary's treatment of unpaid Part A days as "days entitled to benefits under part A" is upheld, the Hospitals contend that the Secretary must at least apply that interpretation of the word "entitled" consistently by also treating days for which no supplemental security income payments were received as days "entitled to supplemental security income benefits" under 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).

4. As explained below, the Secretary's policy of applying different interpretations to the same term, "entitled," used in the same sentence of the statute is the epitome of arbitrary and capricious agency action and must be reversed. *See Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 20 n.1 (D.C. Cir. 2011) (Kavanaugh, J., concurring) ("HHS thus interprets the word 'entitled' differently within the same sentence of the statute.  The only thing that unifies the Government's inconsistent definitions of this term is its apparent policy of paying out as little money as possible. I appreciate the desire for frugality, but not in derogation of law."); *see also Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 799 (D.C. Cir. 1984) ("It would be arbitrary and capricious

Dina Yunker Frank
Attorney General's Office – UW Division
UW Mailbox 359475
Seattle, WA 98195-9475
(206) 543-4150
Facsimile (206) 543-0779

for [the Secretary] to bring varying interpretations of the statute to bear, depending upon whether the result helps or hurts Medicare's balance sheets . . . .").

## II. JURISDICTION AND VENUE

5. This action arises under Title XVIII of the Social Security Act, as amended ("Act") (42 U.S.C. §§ 1395 *et. seq.*), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq*.

6. This Court has jurisdiction under 42 U.S.C. § 1395oo(f)(1), to review a final decision of the Provider Reimbursement Review Board ("PRRB"). The final decision of the PRRB, granting expedited judicial review, was issued August 22, 2016 under PRRB Case No. 10-1325GC, a copy of which is attached hereto as Exhibit "A." This action is filed within 60 days of receipt of that decision and is therefore timely pursuant to 42 U.S.C. § 1395oo(f)(1) and 42 C.F.R. § 405.1801.

7. Pursuant to 42 U.S.C. § 1395oo(f)(1), venue is proper in the judicial district in which the providers are located. Plaintiffs are both located in the judicial district for Western Washington.

## III. PARTIES

8. Plaintiff Hospitals, both members of UW Medicine and located in Seattle, Washington, are University of Washington Medical Center, Medicare Provider No. 50-0008, and Harborview Medical Center, Medicare Provider No. 50-0064. At all relevant times, Hospitals had Medicare provider agreements and were eligible to participate in the Medicare program. This action covers Medicare fiscal year ending June 30, 2007.

9. Defendant, Sylvia Mathews Burwell, is the Secretary of the Department of Health and Human Services, 200 Independence Avenue, S.W., Washington D.C. 20201, the federal

Complaint: Page 3

Dina Yunker Frank
Attorney General's Office – UW Division
UW Mailbox 359475
Seattle, WA 98195-9475
(206) 543-4150
Facsimile (206) 543-0779

agency responsible for the administration of the Medicare and Medicaid Programs. Defendant Burwell is sued in her official capacity. References to the Secretary herein are meant to refer to her, to her subordinates, and to her official predecessors or successors as the context requires.

10. The Center for Medicare and Medicaid Services ("CMS") is a component of the Department of Health and Human Services ("HHS") with responsibility for day-to-day operations and administration of the Medicare program. References to CMS herein are meant to refer to the agency and its predecessors.

### IV. THE MEDICARE PROGRAM

11. Congress enacted the Medicare program (Title XVIII of the Act) in 1965. As originally enacted, Medicare was a public health insurance program that furnished health benefits to the aged, blind and disabled. Over the years, the scope of benefits and covered individuals has been expanded.

12. Among the benefits covered by Medicare are inpatient hospital services. Effective October 1, 1983, Congress adopted a prospective payment system ("PPS") to reimburse most acute care hospitals, including Hospitals, for inpatient operating costs. 42 U.S.C. § 1395ww(d). Under PPS, hospitals are paid a fixed amount for services rendered based upon diagnosis-related groups ("DRGs"), subject to certain payment adjustments, such as the DSH payment at issue here meant to compensate hospitals for the additional cost associated with treating indigent patients.

13. The Secretary has delegated much of the responsibility for administering the Medicare program to CMS. The Secretary, through CMS, contracted out many of the audit and payment functions for inpatient hospital care furnished to Medicare program beneficiaries to organizations known as fiscal intermediaries or Medicare administrative contractors ("intermediaries"). 42 U.S.C. § 1395h.

Dina Yunker Frank
Attorney General's Office – UW Division
UW Mailbox 359475
Seattle, WA 98195-9475
(206) 543-4150
Facsimile (206) 543-0779

14. At the close of the fiscal year, a hospital provider of services must submit to its intermediary a cost report showing the allowable costs incurred and amounts due from Medicare for the fiscal year and the payments received from Medicare. The intermediary is required to audit the cost report and inform the hospital provider of a final determination of the amount of Medicare reimbursement through a Notice of Program Reimbursement ("NPR"). 42 CFR §405.1803.

15. A hospital provider dissatisfied with its intermediary's determination may file an appeal to the Provider Reimbursement Review Board ("PRRB") as long as the amount in controversy is $10,000 or more and the request for hearing is within 180 days of the date the hospital provider receives the NPR. 42 U.S.C. §1395oo(a). The PRRB was established by the Social Security Amendments of 1972 (Pub. L. 92-603) as a national, independent forum for hearing disputes between hospitals and their intermediaries.

16. Pursuant to PRRB Rule 16, a hospital may transfer a specific issue from an individual appeal to an existing group appeal when there is a single common issue to be resolved. The PRRB Rules set out the documentation requirements for such a transfer.

17. Two or more providers under common ownership or control wishing to appeal a common issues from cost reporting periods ending the same calendar year must bring the appeal as a group appeal, provided the amount in controversy meets or exceeds $50,000 in the aggregate. *See* 42 C.F.R. § 405.1837.

18. The decision of the PRRB is a final administrative decision, unless the Secretary, through the Administrator of CMS, reviews the PRRB's decision; the Administrator may reverse, affirm or modify the PRRB's decision. 42 U.S.C. § 1395oo(f). The PRRB will order expedited judicial review ("EJR") when it has jurisdiction over an appeal but lacks the authority to grant the relief requested, the Administrator of CMS may only review the jurisdictional component of the

Dina Yunker Frank
Attorney General's Office – UW Division
UW Mailbox 359475
Seattle, WA 98195-9475
(206) 543-4150
Facsimile (206) 543-0779

PRRB's EJR decision. The Administrator of CMS may not review the PRRB's determination of its authority to decide the legal question. 42 C.F.R. § 405.1842(g)(1)(i) and (ii).

19. A hospital has the right to obtain judicial review of any final decision of the PRRB, or of the Secretary, by filing a civil action within 60 days of the date on which notice of any final decision by the PRRB, or of any reversal, affirmance or modification by the Secretary, is received. 42 U.S.C. § 1395oo(f). Pursuant to 42 C.F.R. § 405.1801 the date of receipt for a decision of the PRRB is presumed to be 5 days after the date of issuance of such decision. If the PRRB grants EJR, the hospital provider may file a complaint in Federal district court in order to obtain review of the legal question. 42 C.F.R. § 405.1842(g)(2).

## V. THE MEDICARE DISPROPORTIONATE SHARE PAYMENT ADJUSTMENT

20. In 1986, Congress amended Title XVIII of the Social Security Act to require the Secretary to make additional payments to hospitals that serve "a significantly disproportionate number of low-income patients . . . ." 42 U.S.C. § 1395ww(d)(5)(F)(i)(I). Eligibility for these "disproportionate share" (DSH) payments, and the level of these payments, is based on the calculation of a "disproportionate share percentage" that considers the number of low-income patients a hospital serves. *See* 42 U.S.C. §§ 1395ww(d)(5)(F)(v) and (vi).

21. As the Ninth Circuit observed in *Portland Adventist Medical Ctr. v. Thompson*, 399 F.3d 1091, 1095 (9th Cir. 2005) (quoting *Legacy Emanuel*, 97 F.3d at 1265):

> Congress' "overarching intent" in passing the [Medicare] disproportionate share provision was to supplement the prospective payment system payments of hospitals serving "low income" persons . . . . Congress intended the Medicare and Medicaid fractions to serve as a proxy for all low-income patients.

22. To be eligible for the DSH payment, a hospital must meet certain systemic criteria, including a disproportionate patient percentage that exceeds a specific threshold. The amount of

Complaint: Page 6

Dina Yunker Frank
Attorney General's Office – UW Division
UW Mailbox 359475
Seattle, WA 98195-9475
(206) 543-4150
Facsimile (206) 543-0779

the DSH payment then depends upon the extent to which the disproportionate patient percentage exceeds the threshold.

23. The disproportionate patient percentage is statutorily defined as the sum of two fractions expressed as a percentage for a hospital's cost reporting period. These fractions are commonly known as the "Medicare/SSI fraction" and the "Medicaid fraction," respectively, and are defined as follows:

> (I) The fraction (expressed as a percentage) the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such dates) were *entitled* to benefits under part A of this title and were *entitled* to supplemental security income benefits (excluding any State supplementation) under title XVI of this Act, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were *entitled* to benefits under part A of this title,
>
> . . .
>
> (II) The fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consists of patients who (for such days) were *eligible* for medical assistance under a State plan approved under title XIX of this chapter, but who were not *entitled* to benefits under part A of this title, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi) (emphasis added).

24. As set forth in the statutory language above, the numerator of the Medicaid fraction consists of days of patients who were both *eligible* for medical assistance under Title XIX, i.e., Medicaid, and *not entitled* to benefits under Part A of Title XVII, i.e., Medicare. The denominator for the Medicaid fraction is the hospital's total patient days for the period. The statutory language defines the SSI fraction as consisting solely of days for patients who were "*entitled* to benefits under Part A" of Medicare. The denominator of the Medicare/SSI fraction includes all Part A days

Complaint: Page 7

Dina Yunker Frank
Attorney General's Office – UW Division
UW Mailbox 359475
Seattle, WA 98195-9475
(206) 543-4150
Facsimile (206) 543-0779

for patients "entitled to benefits under Part A," and the numerator includes only those part A days for patients who are also *entitled* to Social Security Income ("SSI") benefits.

25. The Secretary implemented the Medicare DSH provisions through 42 C.F.R. § 412.106. The portion of the regulation which applies to the SSI fraction, prior to the change in language in 2008, states:

> (b) *Determination of a hospital's disproportionate patient percentage-*
>   (1) *General Rule.* A hospital's disproportionate patient percentage is determined by adding the results of two computations and expressing that sum as a percentage.
>   (2) *First computation: Federal fiscal year.* For each month of the Federal fiscal year in which the hospital's cost reporting period begins, CMS-
>     (i) Determines the number of **covered** patient days that-
>       (A) Are associated with discharges occurring during each month; and
>       (B) Are furnished to patients who during that month were entitled to both Medicare Part A and SSI, excluding those patients who received only State supplementation;
>     (ii) Adds the results for the whole period; and
>     (iii) Divides the number determined under paragraph (b)(2)(ii) of this section by the total number of patient days that-
>       (A) Are associate with discharges that occur during that period; and
>       (B) Are furnished to patients entitled to Medicare Part A.

(emphasis added to the word "covered"). The change to the regulation which first appeared in the 2008 regulations, but purportedly effective October 1, 2004, omits the word "covered" and now state that:

> (b) *Determination of a hospital's disproportionate patient percentage-*
>   (1) *General Rule.* A hospital's disproportionate patient percentage is determined by adding the results of two computations and expressing that sum as a percentage.
>   (2) *First computation: Federal fiscal year.* For each month of the Federal fiscal year in which the hospital's cost reporting period begins, CMS-

Complaint: Page 8

Dina Yunker Frank
Attorney General's Office – UW Division
UW Mailbox 359475
Seattle, WA 98195-9475
(206) 543-4150
Facsimile (206) 543-0779

      (i)      Determines the number of patient days that-
           (A)    Are associated with discharges occurring during each month; and
           (B)    Are furnished to patients who during that month were entitled to both Medicare Part A and SSI, excluding those patients who received only State supplementation;
      (ii)     Adds the results for the whole period; and
      (iii)    Divides the number determined under paragraph (b)(2)(ii) of this section by the total number of patient days that-
           (A)    Are associate with discharges that occur during that period; and
           (B)    Are furnished to patients entitled to Medicare Part A.

26. It is the regulatory language that existed pre-October 1, 2003, which used the phrase "**covered** patient days," 42 C.F.R. § 412.106(b)(2) (2003), that is controlling here.

27. The Secretary has conceded that the "2004 Final Rule has ceased to exist." *See* Def.'s Response to the Court's Sept. 29, 2014 Minute Order at 2, *Allina Health Servs. v. Burwell*, No. 14-01415 (D.D.C. Oct. 16, 2014) ("Because the D.C. Circuit upheld the . . . vacat[ur of] the 2004 Final Rule . . . the 2004 Final Rule has ceased to exist.")

28. Despite the fact that the regulatory language as existing pre-October 1, 2003 controls, the invalidated regulation was nevertheless clearly relied upon in establishing the Hospitals' DSH percentages for their June 30, 2007 cost reporting period and was relied upon in the final decision of the Secretary in this case. *See* Exhibit A.

29. While the Hospitals believe that the reliance on the invalidated regulation was erroneous, the error was largely academic since the Secretary continues to consider an individual to be "entitled to benefits under part A," regardless of whether the days were "covered" or not "covered" by Medicare, even in the absence of the invalidated regulation. *See* Administrator's

Complaint: Page 9

Dina Yunker Frank
Attorney General's Office – UW Division
UW Mailbox 359475
Seattle, WA 98195-9475
(206) 543-4150
Facsimile (206) 543-0779

Decision, issued December 2, 2015 pursuant to *Allina Health Servs v. Sebelius*, 746 F.3d 1102 (D.C. Cir. 2014).

30. In other words, it is the Secretary's policy that non-covered categories of Medicare Part A days—for example, days for which Part A benefits have been exhausted, days for which payment was made under Part C and not Part A, and days for which Medicare Part A was a secondary payor and therefore made no payments—remain "entitled" to benefits under Part A and therefore are included in the SSI fraction. Because CMS considers these days as "days entitled to benefits under Part A," they are also excluded from the Medicaid fraction, even if Medicaid eligible.

31. Despite the Secretary's policy of treating unpaid Part A days as days entitled to benefits under Part A, CMS requires that a beneficiary be <u>paid</u> SSI benefits (or "covered" by SSI) during the period of his or her hospital stay in order for such days to be considered "entitled to supplemental security income benefits" and included in the numerator of the SSI fraction.

32. The Secretary, therefore, does not include days in the numerator of the SSI fraction when individuals were eligible for SSI but did not receive SSI payment during their hospitalization for such reasons as failure of the beneficiary to have a valid address, representative payee problems, Medicaid paying for more than 50 percent of the cost of care in a medical facility, or the period of hospitalization is during the first month of eligibility before a cash payment is made. Yet none of these reasons affect the patient's indigency. *See, e.g., Legacy Emanuel*, 97 F.3d at 1266 (holding in an analogous circumstance that "[p]atients meeting the statutory requirements for Medicaid do not cease to be low-income patients on days that the state does not pay Medicaid inpatient hospital benefits.")

Complaint: Page 10

Dina Yunker Frank
Attorney General's Office – UW Division
UW Mailbox 359475
Seattle, WA 98195-9475
(206) 543-4150
Facsimile (206) 543-0779

33.     This policy ultimately reduces the Secretary's DSH payment obligation, as does the Secretary's wholly inconsistent policy of treating unpaid Part A days as days entitled to benefits under Part A.

34.     The Secretary calculates an individual hospital's SSI percentage by matching Medicare enrollment data with the SSI eligibility file provided by the Social Security Administration ("SSA"). *See* 75 Fed. Reg. 50042, 50278 (Aug. 16, 2010).

35.     Using SSA payment status codes, the Secretary identifies which individuals she believes were "entitled" to SSI benefits. However, of the more than 100 payment status codes, the Secretary has chosen to use only C01, M01 and M02 to identify SSI-entitled individuals. *See* 75 Fed. Reg. at 50280-81.

36.     In rulemaking, commenters specifically requested that the Secretary include other payment codes that identified "entitled" individuals, but the Secretary has adopted a policy of including only codes that identify people receiving actual SSI cash payment. *Id*. For example, commenters requested that codes S06 (suspended payment because recipients whereabouts are unknown based on "undeliverable checks, mail, reports of change or a change of address") and S07 ("checks returned for reasons that are unclear or for reasons other than address or a representative payee problem") be included. *Id.*; *see also* Social Security Program Operations Manual System SI §§ 02301.240 and 02301.245.

37.     The Secretary, however, continued to exclude beneficiaries coded S06 and S07 from the numerator of the SSI fraction despite the fact that these individuals are "entitled to [SSI] benefits."

38.     The Secretary's policy also results in the exclusion of days for which social security income recipients have their cash benefits reduced to zero to recover overpayments that may exist

Complaint: Page 11

Dina Yunker Frank
Attorney General's Office – UW Division
UW Mailbox 359475
Seattle, WA 98195-9475
(206) 543-4150
Facsimile (206) 543-0779

related to other programs administered by the Social Security Administration, such as Social Security (Title II) and Veterans Benefits (Title VIII) even though such reductions have no bearing on the patient's indigency.

39. In sum, the Secretary contends that "the phrase 'entitled to benefits under Part A' applies to all individuals who meet the statutory criteria in 42 U.S.C. § 426(a) and (b) for receiving 'hospital insurance benefits under Part A,'" *See, e.g., Northeast Hosp. Corp.,* 657 F.3d at 20 n.1, but does not interpret the analogous phrase "entitled to supplemental security income benefits" as encompassing all individuals who meet the statutory criteria in 42 U.S.C. § 1382(a) for receiving supplemental security income benefits. Each of these contradictory interpretations reduce the Secretary's DSH payment obligation. They can only be reconciled with the Secretary's interest in "paying out as little money as possible." *Id.* This motivation cannot alter the fact that the Secretary has arbitrarily and capriciously adopted two conflicting interpretations of the same word in the same sentence.

## VI.  **HOSPITALS' SSI PATIENTS**

40. Plaintiffs have obtained historic Social Security Administration Records related to 1,378 patient days that the Secretary excluded from the numerator of the SSI Fraction for the year at issue.

41. According to records obtained by Plaintiffs from the Social Security Administration, the patient days summarized in the table below were excluded from the numerator of the SSI fraction for the University of Washington Medical Center's fiscal year ending 2007.

Dina Yunker Frank
Attorney General's Office – UW Division
UW Mailbox 359475
Seattle, WA 98195-9475
(206) 543-4150
Facsimile (206) 543-0779

| Payment Status Code | No. Days | Percent of total days | Description |
| --- | --- | --- | --- |
| E01 | 54 | 3.92% | Eligible for benefits but not due a payment |
| N01 | 6 | 0.44% | Recipient is Eligible and due no payment |
| N03 | 3 | 0.22% | Outside of US (pymt may have been proated) |
| N18 | 3 | 0.22% | Failure to Cooperate – May Still be Eligible |
| S06 | 25 | 1.81% | Suspended – Address Unknown |
| Other N's | 65 | 4.72% | N01, N02, N04, N25 – Other Non-pay records |
| Other T's | 726 | 52.68% | T31, T33, T50, & T51 Terminated SSI Records |
| None | 496 | 35.99% | Title II Benefits Only |
| **Totals** | **1,378** | **100** | |

42.     As reflected above, three patient days (associated with a single patient) were excluded from the count because the patient was thought to be outside of the country (payment status code N03), even though the patient was receiving care at one of the Plaintiffs' facilities during those three days.

43.     In addition, fifty-four patient days were excluded from the count under E01, which denotes that the patient was eligible for benefits during those days, but did not receive social

Dina Yunker Frank
Attorney General's Office – UW Division
UW Mailbox 359475
Seattle, WA 98195-9475
(206) 543-4150
Facsimile (206) 543-0779

security income benefits because a State Medicaid Program was paying for over 50% of the cost of the patient's care at that time.

## VI. THE HOSPITALS' ADMINISTRATIVE APPEAL

44. On September 21, 2009 (University of Washington Medical Center) and August 31, 2009 (Harborview Medical Center), the intermediary, Noridian Administrative Services, issued NPRs for Hospitals' cost reporting periods ending June 30, 2007 ("FYE 6/30/2007").

45. The NPRs were each timely appealed to the PRRB on March 19, 2010 (University of Washington Medical Center) and February 26, 2010 (Harborview Medical Center) by written requests for individual hearings.  The Hospitals subsequently transferred the issue to the group, the subject of the PRRB's EJR decision at issue here, on September 7, 2010 and the PRRB assigned Case No. 10-1325GC.

46. By decision dated August 22, 2016, the PRRB found that it had jurisdiction over the Hospitals' appeal but lacked the authority to grant the relief requested by the Hospitals and therefore granted the Hospitals' request for EJR on the group appeal issue in PRRB Case No. 10-1325GC. A copy of this decision is attached as Exhibit "A."

## VII. ASSIGNMENT OF ERRORS

47. The applicable provisions of the APA provide that the "reviewing court shall … hold unlawful and set aside agency action … found to be … (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; … (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence[.]"  5 U.S.C. § 706(2).

Dina Yunker Frank
Attorney General's Office – UW Division
UW Mailbox 359475
Seattle, WA 98195-9475
(206) 543-4150
Facsimile (206) 543-0779

48. The Secretary's determination to treat days for which no Part A payments were made as nonetheless "entitled to benefits under part A" is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; … (C) in excess of statutory . . . authority. . . ; (D) without observance of procedure required by law; [and] (E) unsupported by substantial evidence" because it is:

    a. inconsistent with the plain language of the Act and conflates the statutory term "entitled" with the statutory term "eligible"; *see Legacy Emanuel*, 97 F.3d at 1265.

    b. inconsistent with the plain language of the controlling pre-2004 regulation, which explicitly included only "covered," i.e., "paid," Part A days and that pre-2004 is controlling since CMS admitted that its attempt to amend that 2004 regulation was procedurally invalid and "ceased to exist";

    c. inconsistent with the Secretary's longstanding interpretation of "entitled to benefits under Part A" to mean "entitled to payment under Part A," *see* 55 Fed. Reg. 35990, 35996 (Sept. 4, 1990) ("entitle[ment] to benefits under part A" ceases when "[e]ntitlement to payment under part A ceases"); and

    d. inconsistent with the Secretary's longstanding interpretation of "entitled to supplemental security income benefits" as including only SSI days for which payment was actually made, *see, e.g.,* 75 Fed. Reg. at 50280 (stating that "[e]ntitlement to" receive SSI benefits [requires that an individual] 'be paid benefits by the Commissioner of the Social Security' . . . .").

49. The Secretary's concurrent interpretation of "entitled to supplemental security income benefits" under 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) as including only days for which actual SSI payments were made is "arbitrary, capricious, an abuse of discretion, or otherwise not

Complaint: Page 15

Dina Yunker Frank
Attorney General's Office – UW Division
UW Mailbox 359475
Seattle, WA 98195-9475
(206) 543-4150
Facsimile (206) 543-0779

in accordance with law; … (C) in excess of statutory . . . authority. . . ; (D) without observance of procedure required by law; [and] (E) unsupported by substantial evidence" because it is:

    a. is inconsistent with her policy described above of treating <u>unpaid</u> Part A days as nonetheless "entitled to benefits under part A";

    b. is inconsistent with the legislative history and purpose of the Medicare DSH statute, which is to provide additional payment to hospitals that incur higher costs in treating low-income patients, because whether payment has actually been made has nothing to do with a patient's actual indigency; and

    c. arbitrarily assigns two different meanings to the same term "entitled."

50. For the reasons set forth above, the Secretary's policy of treating unpaid Part A days as "entitled to benefits under part A," while treating unpaid SSI days as *not* "entitled to supplemental security income benefits" conflicts with the Medicare DSH Statute and is otherwise arbitrary and capricious, as well as an abuse of discretion.

WHEREFORE the Hospitals request an order:

(a) Declaring invalid and enjoining the Secretary from applying her policy that unpaid Medicare part A days are "days entitled to benefits under part A" for purposes of the DSH SSI and Medicaid fractions or, in the alternative, directing the Secretary to include unpaid SSI eligible patient days in the numerator of the SSI percentage utilizing SSI payment status codes that reflect the individuals' entitlement for SSI—even if the individuals did not receive SSI payments;

(b) Directing the Secretary to calculate the Plaintiff Hospitals' DSH payments consistent with that Order and to make prompt payment of any additional amounts due to the Plaintiff Hospitals plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2); and

Dina Yunker Frank
Attorney General's Office – UW Division
UW Mailbox 359475
Seattle, WA 98195-9475
(206) 543-4150
Facsimile (206) 543-0779

1       (c)      For Plaintiffs' costs and reasonable attorney's fees, and for such other and further

2 relief as the Court deems appropriate.

Dated this 7th day of October, 2016.

                                                          By:    /s/      Dina Yunker Frank
                                                                  Dina Yunker Frank
                                                                  WSBA No. 16889
                                                                  Attorney for Plaintiffs
                                                                  Attorney General's Office – UW Division
                                                                  UW Mailbox 359475
                                                                  Seattle, WA 98195-9475
                                                                  Telephone: (206) 534-4150
                                                                  Fax: (206) 543-0779
                                                                  dinay@u.washington.edu


                                                                  Daniel J. Hettich*
                                                                  DC Bar No. 975262
                                                                 Attorney for Plaintiffs
                                                                 King & Spalding LLC
                                                                 1700 Pennsylvania Ave NW
                                                                 Suite 200
                                                                 Washington, DC 20006
                                                                 Telephone:  (202) 737-0500
                                                                 Fax:  (202) 626-3737
                                                                Email:  DHettich@kslaw.com


*Pro hac vice* motion to be submitted

Dina Yunker Frank
Attorney General's Office – UW Division
UW Mailbox 359475
Seattle, WA 98195-9475
(206) 543-4150
Facsimile (206) 543-0779